UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| TRACEY D. WHITE-DODSON | ) | CASE NO. 4:12CV1749 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| COMMISSIONER OF SOCIAL SECURITY, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

Plaintiff, Tracey D. White-Dodson, requests judicial review of the final decision of the Commissioner of Social Security denying her Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his November 2, 2010 decision in finding that Plaintiff was not disabled because she retained the residual functional capacity (RFC) to make a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 11-28). For the following reasons, the undersigned recommends that the Court affirm the decision of the ALJ and enter judgment for the Defendant.

I. PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI on November 17, 2008 (Tr. 124-34, 159). She alleged

a disability onset date of May 1, 2008 (Tr. 12, 132). The agency denied Plaintiff's applications initially (Tr. 57-63) and on reconsideration (Tr. 68-81). Thereafter, Plaintiff requested a hearing before an ALJ, which was held on October 19, 2010 (Tr. 29-52). The ALJ decided on November 2, 2010 that Plaintiff did not meet the Act's definition of disability during the relevant period (Tr. 11-28). Thereafter, the Appeals Council denied Plaintiff's request for review (Tr. 1-6).

## II.    STATEMENT OF FACTS

Plaintiff claims disability primarily due to anxiety, depression, post-traumatic stress disorder (PTSD), and the residuals of a stab wound to her stomach (Tr. 34, 164). She contends that the ALJ formulated an incomplete residual functional capacity assessment, and, thus, offered an incomplete hypothetical question to the vocational expert (Pl.'s Br. at 3-6). She also claims that he omitted certain psychological limitations supported by or found in the consultative report of J. Joseph Konieczny, Ph.D. (Tr. 255-59) (Pl.'s Br. at 5-6). Plaintiff was born on June 7, 1966, and was forty-one years old on the alleged disability onset date (Tr. 11-28). Plaintiff has not engaged in substantial employment since May 1, 2008, the alleged onset date.

## III.    SUMMARY OF MEDICAL EVIDENCE

Plaintiff went to the Burdman Group, Inc. (Burdman) on June 23, 2008 (Tr. 201-15). She explained that a few days earlier, on June 5, 2008, she had been sleeping at her

boyfriend's apartment (Tr. 204). After a night of drinking, he returned in the early morning and accused her of stealing his money (Tr. 204). She denied it (Tr. 204). When Plaintiff arose from the bed, he stabbed her in the stomach (Tr. 204). She ran outside; he pursued her (Tr. 204). He tried to stab her again, but she wrestled the knife away (Tr. 204). She then called a friend and went to the hospital (Tr. 204).

Because of this incident, Plaintiff alleged increased fear at night – she needed the light on and the door open to sleep (Tr. 210). She had nightmares, but they decreased (Tr. 210). She preferred sleeping during the day when people were around (Tr. 211). She was sad and felt like crying most of the time (Tr. 210). Plaintiff kept to herself, and appeared short-tempered (Tr. 210). She complained of anxiousness, due to situational stressors (Tr. 210. She also had difficulty concentrating (Tr. 211). Nonetheless, Plaintiff posed no risk to herself or others (Tr. 212). The Burdman staff assigned her a global assessment of functioning (GAF) score of 50 (Tr. 214).

Two months later, on September 25, 2008, Plaintiff visited Turning Point Counseling Services, Inc. (Tr. 233-35). She complained of poor concentration (Tr. 234) and symptoms related to anxiety, depression, and traumatic stress (Tr. 238). She could not regulate these symptoms, and had difficulty sleeping (Tr. 239). It was determined that she was only a low risk to herself and others (i.e., vague, fleeting suicidal ideation) (Tr. 244). On examination, Plaintiff appeared well groomed, with an average demeanor, avoidant eye contact, slowed activity, and clear speech (Tr. 245). She reported no delusions, no hallucinations, no self abuse, and no aggressiveness (Tr. 245). She possessed a logical thought process, a

3

depressed/anxious mood, a full affect, and cooperative behavior (Tr. 245). Plaintiff had impaired attention/concentration, but average intelligence (Tr. 245). She received a GAF score of 60 (Tr. 242).

A few days later, Plaintiff again complained to the Turning Point staff of depression and difficulty sleeping (Tr. 227). Nevertheless, she was about to start a computer class (Tr. 227). She was also seriously thinking of applying for Social Security disability (Tr. 228). On examination, Plaintiff appeared well groomed, with an average demeanor, average eye contact, average activity, and clear speech (Tr. 228). She reported no delusions, hallucinations, self-abuse, or aggressiveness (Tr. 228). She had a depressed mood and constricted affect (Tr. 229), but her thought process was logical (Tr. 228). She was also cooperative and displayed no cognitive impairment (Tr. 229). The Turning Point staff assigned her a GAF score of 76 (Tr. 229).

On October 7, 2008, Margaret L. Good, LPC, LSW, of Burdman, completed a mental health report of Plaintiff (Tr. 218-19). The following month, on November 9, 2008, Plaintiff informed the Turning Point staff that she had not taken several of her medications, due to tingling in her fingers (Tr. 225). She appeared normal and cooperative (Tr. 225). She expressed fear, and reported flashbacks to her stabbing (Tr. 225). She also appeared tearful (Tr. 225). Nevertheless, she maintained an organized thought process and no suicidal or homicidal ideation (Tr. 225). She also possessed adequate cognition, insight, and judgment (Tr. 225).

Three days later, Ms. Good filled out a Mental Assessment of Ability to do Work-Related Activities (Tr. 216-17). Aside from relating to co-workers (poor) or social situations (fair), dealing with work stress (fair), and maintaining attention/concentration (good), Plaintiff had either an unlimited or very good ability in all categories (Tr. 216-17). Ms. Good assessed Plaintiff with a GAF score of 55 (Tr. 217). She found Plaintiff "able to maintain her stability and focus when working on a specific task" (Tr. 217). Moreover, Plaintiff "show[ed] consistent emotional improvement" (Tr. 217). In Ms. Good's opinion, Plaintiff "[wa]s able to return to work" in an environment that involved less heavy lifting and fewer people (Tr. 217).

Plaintiff went to Turning Point on January 13, 2009, complaining of irritability, tenseness, and sleeping difficulties (Tr. 223). She appeared alert and cooperative (Tr. 223). She also had a logical thought process and normal thought content (Tr. 223). No overt delusions presented (Tr. 223). Plaintiff had an euthymic mood and serious affect (Tr. 223). She denied suicidal or homicidal ideation (Tr. 223). She possessed adequate cognition, insight, and judgment (Tr. 223).

On March 2, 2009, Dr. Konieczny performed his consultative, psychological examination (Tr. 255-59). Plaintiff reported that she cleaned, laundered clothes, and performed other household activities (as permitted by her alleged physical impairments) (Tr. 258). She managed her own finances, but had no checking account or credit card (Tr. 258). Plaintiff also reported graduating high school without repeating any grades or needing special education (Tr. 255-56).

On examination, Plaintiff exhibited adequate grooming and hygiene (Tr. 256). Plaintiff generally appeared pleasant and cooperative (Tr. 256). She complained of a slight headache, but did not emphasize it (Tr. 256). She reported difficulty controlling her temper, but showed no signs of undue impulsiveness (Tr. 256). She alleged diminished motivation, but Dr. Knoieczny found it adequate (Tr. 256). Additionally, Plaintiff spoke reasonably well, and seemed capable of expressing herself clearly and coherently (Tr. 257). She noted difficulty sleeping, an increased appetite, depression, crying daily, diminished energy, and feeling on edge (Tr. 257). Nevertheless, she maintained appropriate eye contact, she denied suicidal ideation and guilt, and she gave no indication of nervousness or anxiety (Tr. 257). Plaintiff had no delusions, no paranoid or grandiose thinking, and no hallucinations (Tr. 257). She showed moderate deficits in her general fund of knowledge and in performing logical abstract reasoning, but she remained oriented (Tr. 257).

Ultimately, Dr. Koeniczny opined that Plaintiff sustained moderate impairments in her abilities to concentrate and attend to tasks, understand and follow directions, relate to others, and deal with the general public (Tr. 258). She had a marked impairment in withstanding stress and pressure (Tr. 258). Dr. Koeniczny also felt that Plaintiff displayed poor insight, and moderate deficits in her awareness of rules of social judgment and conformity, and in her overall level of judgment (Tr. 258). He also suggested that Plaintiff functioned at a reduced level of efficiency (Tr. 258). She required supervision and monitoring of her daily activities and financial affairs (Tr. 258). He assessed her with a GAF score of 44 to 50 (Tr. 258).

On March 3, 2009, Dr. Mary-Helene Massullo also consultatively examined Plaintiff

6

(Tr. 246-54). She observed that Plaintiff "appear[ed] able to do work related activities such as . . . hearing, and speaking" (Tr. 249). Plaintiff's "mental status appeared normal . . ." (Tr. 249).

On March 1, 2009, Bruce Goldsmith, Ph.D., a state agency psychologist, completed a Mental Residual Functional Capacity Assessment (Tr. 260-63) and a Psychiatric Review Technique form (Tr. 264-76). He concluded that Plaintiff retained the residual functional capacity to perform simple, routine tasks in a setting that involved relatively static duties, explained changes, and no strict production quota or fast pace (Tr. 252). Moreover, Plaintiff needed superficial social interactions and occasional interaction with the public (Tr. 262). Subsequently, on August 4, 2009, Cynthia Waggoner, Psy. D., another state agency psychologist, affirmed Dr. Goldsmith's findings (Tr. 305).

On April 29, 2009, Plaintiff visited Valley Counseling Services, Inc. (Valley), complaining of sleep difficulties, poor concentration, mild verbal impulsiveness, mood swings, and psychosocial stressors (Tr. 285, 291). She avoided crowds, and panicked in social situations (Tr. 292-93). The Valley staff assigned her a GAF of 30 (Tr. 294). On examination, however, Plaintiff appeared well groomed, with average eye contact, a withdrawn demeanor, average activity , and clear speech (Tr. 296). She had no delusions, hallucinations, guardedness, evidence of self-abuse, or aggressiveness (Tr. 296). She exhibited a depressed/anxious/irritable mood, but possessed a logical thought process and full affect (Tr. 296). Plaintiff had impaired attention and concentration, but she remained cooperative (Tr. 296). She also displayed average intelligence and fair insight (Tr. 296).

7

Plaintiff returned to Valley one month later, complaining of symptoms related to anxiety, depression, and sleeping (Tr. 298-301). However, she appeared well groomed, with average eye contact, average activity, a demanding demeanor, and clear speech (Tr. 299). She maintained a logical thought process, and reported no delusions, hallucinations, self-abuse, or aggressiveness (Tr. 299). Plaintiff had a mildly depressed/anxious/irritable mood and constricted affect (Tr. 300). Nonetheless, she cooperated, she reported no cognitive impairments, and she displayed average intelligence (Tr. 300). The Valley staff assigned her a GAF score range of 50 to 60 (Tr. 300).

On July 1, 2009, a staff member of St. Elizabeth Health Center (St. Elizabeth) filled out a questionnaire on Plaintiff's condition (Tr. 303-04). Plaintiff's symptoms were noted (Tr. 303). It was also reported, however, that Plaintiff was "responding to counseling at Turning Point" (Tr. 304). Plaintiff's medication changes and continued sleep difficulties were also noted, but it was further reported that Plaintiff had a mildly improved mood, and appeared to be progressing (Tr. 304).

On August 12, 2009 (Tr. 323-24), October 9, 2009 (Tr. 319-20), and October 15, 2009 (Tr. 318), Plaintiff went to Valley for medication management and counseling.

She returned to Valley nearly a year later, on August 26, 2010, and reported taking no medications for a year (Tr. 326). She appeared well groomed, mistrustful, and avoidant (Tr. 327). She had average activity and clear speech (Tr. 327). Plaintiff reported no delusions, self-abuse, or aggressiveness (Tr. 327). She alleged past hallucinations (Tr. 327). She complained of racing thoughts, an anxious/irritable mood, and a flat affect (Tr. 327).

Nevertheless, she cooperated (Tr. 327). She had impaired attention and concentration, but average intelligence (Tr. 327). She displayed fair/poor insight, but good judgment (Tr. 327). Plaintiff also denied any current suicidal or homicidal ideation (Tr. 328). The Valley staff assessed her with a GAF score of 47 (Tr. 329).

## IV.   THE ALJ'S DECISION

Based upon the record, the ALJ concluded that Plaintiff sustained the severe impairments of status post-stab wound to the stomach with hernia repair, obesity, affective disorder, mood disorder, and PTSD (Tr. 13, Finding No. 3). Plaintiff's impairments did not meet or medically equal a listing (Tr. 14, Finding No. 4), but limited her to a reduced range of light work (Tr. 15, Finding No. 5). This meant occasionally balancing, stooping, crouching, crawling, kneeling, and climbing ramps/stairs (Tr. 15, Finding No, 5). She could also perform simple, routine, repetitive tasks not performed in a fast-paced production environment; involving only simple, work-related decisions; and, in general, relatively few workplace changes (Tr. 15, Finding No. 5). Plaintiff was also limited to occupations that did not involve high levels of stress (Tr. 15, Finding No. 5). She also had to avoid contact with the general public and could tolerate no more than superficial interaction with supervisors and co-workers (Tr. 15, Finding No. 5). While these limitations prevented Plaintiff from doing her past relevant work (Tr. 22, Finding No. 6), she remained capable of performing the unskilled occupations of cleaner, sorter, and assembler (Tr. 23). Consequently, the ALJ decided that she did not meet the Act's definition of disability during the relevant period (Tr.

9

24, Finding No. 11).

## V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled: must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps, and the Commissioner has the burden at Step

10

Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience, and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI.  STANDARD OF REVIEW.

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## VII. ANALYSIS.

Plaintiff challenges the Administrative Law Judge's (ALJ) decision that she did not meet the Social Security Act's (the Act) definition of disability from May 1, 2008 to November 2, 2010, and, thus, did not qualify for disability insurance benefits (DIB) or supplemental security income (SSI) under Titles II and XVI of the Act. *See,* 42 U.S.C. Section 405(g), 1383(c)(3). She offers only one argument – the ALJ unreasonably assessed her residual functional capacity, and, thus, posed an incomplete hypothetical question to the vocational expert. However, the ALJ determined that the additional limitations that Plaintiff seeks to include are unsupported and inconsistent with other evidence of record.

Plaintiff's sole argument is that the ALJ determined an incomplete residual functional capacity assessment, and, thereafter, a flawed hypothetical question to the vocational expert (Pl.'s Br. at 3-6). According to Plaintiff, the ALJ should have included the limitation of being off task more than ten percent of the workday (Tr. 50) (Pl.'s Br. at 4), and Dr. Koeniczny's suggested restrictions of a marked impairment in withstanding stress, moderate impairments in understanding/following directions and having insight, moderate deficits in judgment, and the need for management or supervision of daily activities and financial affairs (Tr. 50-51, 258) (Pl.'s Br. at 4-6). However, the ALJ correctly assessed Plaintiff's residual functional capacity and posed an accurate hypothetical question to the vocational expert.

In determining the residual functional capacity, the ALJ must consider whether: (1) the source examined the claimant; (2) he or she qualifies as a treating source; (3) the evidence supports the source's opinion; (4) the source's opinion is consistent with the record as a

12

whole; (5) the source specializes in the issue that he or she is opining on; and (6) other factors. *See,* 20 C.F.R. Sections 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In assessing Plaintiff's residual functional capacity, the ALJ correctly determined that Dr. Koeniczny's restrictions deserved less weight since they were not supported by the evidence in the record (Tr. 21, 50-51, 258). Throughout the relevant period, healthcare personnel continually found Plaintiff to appear well groomed and/or having average demeanor, average eye contact, or clear speech (Tr. 223, 228, 245, 296, 299, 327). She posed no risk to herself or others (Tr. 212, 225, 328). She continually denied delusions, hallucinations, self-abuse, or aggressiveness (Tr. 223, 228, 245, 257, 296, 299, 327). In addition, Plaintiff consistently appeared to be cooperative and/or having an organized/logical thought process, adequate insight and judgment, average intelligence, or no cognitive impairment (Tr. 223, 225, 228-29, 245, 256, 296, 299-300, 327).

On November 10, 2008, Ms. Good reported that Plaintiff was "able to maintain her stability and focus when working on a specific task" (Tr. 22, 217). She also stated that Plaintiff "show[ed] consistent emotional improvement" (Tr. 22, 217). In her opinion, Plaintiff "[wa]s able to return to work" that involved less lifting and fewer people (Tr. 22, 217).

On March 3, 2009, Dr. Massullo determined that Plaintiff "appear[ed] able to do work related activities such as . . . hearing, and speaking" (Tr. 17, 249). Plaintiff's "mental status appeared normal . . ." (Tr. 19, 249). One week later, Dr. Goldsmith concluded that Plaintiff remained able to perform simple routine tasks in a setting that involved relatively static duties, explained changes, and no strict production quota or fast pace (Tr. 21, 262). She also

13

required superficial social interaction and occasional interaction with the public (Tr. 21, 262). On August 4, 2009, Dr. Waggoner affirmed Dr. Goldsmith's findings (Tr. 21, 305).

Furthermore, Plaintiff informed Dr. Koeniczny that she cleaned, laundered clothes, and performed other household activities (Tr. 258). She also managed her own finances and graduated high school without repeating any grades or needing special education (Tr. 19, 255-56, 258). Also, Plaintiff did not receive mental health treatment for nearly a year during the relevant period (Tr. 20, 312-17, 321-22). Furthermore, when she returned to Valley on August 26, 2010, (Tr. 325-30), Plaintiff acknowledged that she had taken "no medications in one year" (Tr. 20, 326). Hence, the undersigned recommends that the Court find that substantial evidence supports the ALJ's residual functional capacity assessment and subsequent hypothetical question to the vocational expert.

## VIII. CONCLUSION.

Based upon a review of the record, the briefs of the parties, and the law and analysis provided above, the undersigned recommends that this Court affirm the decision of the ALJ. In the opinion of the undersigned, substantial evidence supports the finding that Plaintiff retained the residual functional capacity to perform a significant number of jobs, despite the limitations caused by her physical and mental impairments, and, therefore, she is not disabled. Hence, the undersigned recommends that the Court find that she is not entitled to DIB and

SSI, and affirm the decision of the Commissioner of Social Security and dismiss Plaintiff's Complaint with prejudice.

Dated: January 10, 2013            */s/George J. Limbert*
                                                        **GEORGE J. LIMBERT**
                                                        **UNITED STATES MAGISTRATE JUDGE**

      ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walter,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985); and Local Rule 72.3.