```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
Tracey D. White-Dodson,                       :
                                              :    CASE NO. 4:12-CV-1749
            Plaintiff,                        :
                                              :
vs.                                           :    OPINION & ORDER
                                              :    [Resolving Doc. Nos. 1 & 16]
Commissioner of Social Security,              :
                                              :
            Defendant.                        :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Magistrate Judge George J. Limbert recommends this Court affirm the Social Security Commissioner's denial of supplemental security income (SSI) and disability insurance benefits (DIB) to Plaintiff Tracey White-Dodson. Because sufficient evidence supports the Administrative Law Judge's (ALJ) finding that Plaintiff was not disabled, the Court ADOPTS the reports and recommendation of the Magistrate Judge and AFFIRMS the Commissioner's denial of benefits.

I. Background

White-Dodson, a forty-seven year-old woman, filed applications for disability insurance benefits in November 2008.[1] She says that her disability began in May 2008, shortly after her boyfriend stabbed her in the abdomen.[2] Her applications indicate that post-traumatic stress disorder (PTSD), anxiety, and the stab wound limit her ability to do work; she complains of an inability to

---

[1] Doc. 12, at 11.
[2] *Id.*

-1-

Case No. 4:12-CV-1749
Gwin, J.

focus, depression, crying easily, and pain.[3]

Starting in June 2008, Plaintiff began treatment for the stabbing results. In June 2008, The Burdman Group's staff assessed White-Dodson to have a global assessment of functioning (GAF) score of 50.[4] In September 2008, Turning Point Counseling Services gave her a GAF score of 60.[5] A few days later, Turning Point gave her a GAF of 76.[6] In March 2009, White-Dodson visited Dr. Joseph Konieczny, who assessed Plaintiff with a GAF score of between 44 and 50. In April 2009, Valley Counseling Services examined Plaintiff and assigned her a GAF score of between 50 and 60. In August 2010, Valley again assessed Plaintiff, and assigned her a GAF score of 47.[7]

White-Dodson's claims for disability insurance income and supplemental security income were initially denied in August 2009.[8] To contest the denial, White-Dodson requested a hearing and appeared at a hearing in October 2010. White-Dodson, as well as a vocational expert, testified.

In November 2010, Administrative Law Judge Douglas Cohen denied benefits. The ALJ found that White-Dodson was not disabled because there were jobs in the national economy that Plaintiff could perform.[9] These included working as a cleaner (507,000 jobs nationally), as a sorter (50,000 jobs nationally), or as an assembler (300,000 jobs nationally).[10] The ALJ ultimately gave Dr. Konieczny's opinion little weight, because Dr. Konieczny examined White-Dodson only once, and relied too heavily on her subjective complaints.[11] Further, the ALJ found that Dr. Konieczny's

---

[3] *Id.* at 164.
[4] *Id.* at 215.
[5] *Id.* at 242.
[6] *Id.* at 229.
[7] *Id.* at 329.
[8] *Id.* at 11.
[9] *Id.* at 23.
[10] *Id.*
[11] *Id.* at 21.

Case No. 4:12-CV-1749
Gwin, J.

assessment that White-Dodson had borderline intellectual function was unsupported by the record, because White-Dodson had graduated from high school, on time, while taking regular classes.[12]

Thereafter, White-Dodson sought this Court's review of the ALJ's decision. Under Local Rule 72.2, the action was referred to Magistrate Judge Limbert for a report and recommendation. Magistrate Judge Limbert issued a report and recommended the ALJ's decision be affirmed because it is supported by substantial evidence.[13] Specifically, he found that Plaintiff "retained the residual functional capacity to perform a significant number of jobs, despite the limitations caused by her physical and mental impairments, and, therefore, she is not disabled."[14] White-Dodson timely filed her objections to the report and recommendation.

## II. Legal Standards

To establish disability under the Social Security Act, a claimant must show that she is unable to engage in substantial activity due to the existence of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."[15] Agency regulations establish a five-step sequential evaluation for use in determining whether a claimant is disabled. The claimant's impairment must prevent her from doing her previous work, as well as any other work existing in significant numbers in the national economy.[16]

The Federal Magistrates Act requires a district court to conduct *de novo* review of the

---

[12] *Id.*
[13] Doc. 16, at 14.
[14] *Id.*
[15] *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).
[16] *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).

Case No. 4:12-CV-1749
Gwin, J.

claimant's objections to a report and recommendation.[17] A final decision of the Social Security Commissioner made by an ALJ is, however, not reviewed *de novo*. A district court determines only whether the ALJ's decision is "supported by substantial evidence and was made pursuant to proper legal standards."[18]

Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion."[19] The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence.[20] In deciding whether substantial evidence supports the ALJ's decision, a court should not try to resolve conflicts in evidence or decide questions of credibility.[21] The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.[22] When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would have made a decision different than the ALJ made.[23]

### III. Analysis

White-Dodson raises one objection to the Magistrate Judge's report and recommendation. She says that during the hearing, "the ALJ's questions advanced severe restrictions, which the ALJ then, later, rejected." She says that the ALJ's determination that there were sufficient jobs in the national economy for her is contradicted by the evidence and by the medical advisor's answers during the hearing.

At the hearing, the ALJ asked the vocational expert a series of hypothetical questions based

---

[17] 28 U.S.C. § 636(b)(1).
[18] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).
[19] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).
[20] *See id*.
[21] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).
[22] *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).
[23] *Siterlet v. Sec. of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).

-4-

Case No. 4:12-CV-1749
Gwin, J.

on White-Dodson's conditions. For example, the ALJ asked what types of jobs would be available to someone limited to "simple, routine and repetitive tasks not performed in a fast-paced production environment."[24] After receiving an answer, he would further restrict the hypothetical, such as by asking whether there would be any change in the number of jobs available if the person could tolerate only superficial social interaction.[25]

After a series of such winnowing questions, the vocational expert testified that there would be over 800,000 jobs available in the national economy to match Plaintiff's skills. The ALJ then asked:

> Q: What if I said that this person, there would be times during the day they would be unable to perform their job due to symptoms of their impairments and that would prevent them from performing their job. I'm going to refer to that as being off task. If this person is off task, let's say it's more than 10 percent of the workday and it's on a consistent basis, would that change your testimony?
>
> A: There would be no work, Your Honor.[26]

This question was based off of Dr. Konieczny's reports. The ALJ later wrote:

> [a]lthough additional hypothetical questions were posed to the vocational expert by me and the claimant's representative, which contained further limitations on the claimant's capacity for work, I ultimately concluded that these limitations were not consistent with the evidence of record, and did not accurately reflect the claimant's residual functional capacity. Accordingly, the questions and the answers thereto have been rejected.[27]

While the ALJ's decision discredits Dr. Konieczny's opinion, sufficient evidence supported the ALJ's rejection of Konieczny's opinion.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion

---

[24] Doc. 12, at 48.
[25] *Id.* at 49.
[26] *Id.* at 49-50.
[27] *Id.* at 24.

Case No. 4:12-CV-1749
Gwin, J.

well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record."[28] Here, Dr. Konieczny had limited interactions with Plaintiff, and other record evidence undercut his findings. Multiple treatment write-ups suggest Plaintiff's average intelligence, focus, and judgment.[29] Further, other providers noted that White-Dodson would not suffer from the types of workplace challenges that Dr. Konieczny suggested.[30] And finally, Dr. Konieczny's assessment of Plaintiff's GAF was but one assessment; multiple other assessments demonstrated a higher GAF. There was thus sufficient evidence in the record *both* to minimize the weight of the treating physician's testimony and to find that White-Dodson was not disabled.

### IV. Conclusion

For the foregoing reasons, the Court ADOPTS the recommendations of the Magistrate Judge and AFFIRMS the Commissioner's denial of benefits.

IT IS SO ORDERED.

Dated: June 28, 2013                             s/    *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

---

[28] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).
[29] *See* doc. 12 at 223, 228, 245, 256, 300.
[30] *See id.* at 21 (listing the opinions of two state agency psychologists, the state agency medical consultant, and White-Dodson's social worker).